# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

July 6, 2017
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JR ACQUISITION, LLC,**
**Employer Below, Petitioner**

**vs.)    No. 16-0776**  (BOR Appeal No. 2051260)
(Claim No. 2015008099)

**LEONARD DOTSON,**
**Claimant Below, Respondent**


## MEMORANDUM DECISION

Petitioner JR Acquisition, LLC, by Bradley A. Crouser, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Leonard Dotson, by Anne L. Wandling, his attorney, filed a timely response.

The issue on appeal is whether Mr. Dotson's claim is compensable. On October 9, 2014, the claims administrator denied compensability of the claim. The Office of Judges reversed the claims administrator in its April 22, 2016, Order and held the claim compensable for reactive airways dysfunction syndrome (RADS). The Order was affirmed by the Board of Review on July 15, 2016. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Dotson, a coal miner, became short of breath while working on September 9, 2014. He was able to finish his shift. Later that night, two miners were taken out of the mine after becoming dizzy and short of breath. They were treated at the hospital and released. The mine was temporarily shut down for inspection on September 10, 2014. Mr. Dotson attempted to return to work on September 11, 2014, but had trouble breathing. He was removed from the mine and taken to the hospital where he was treated for complaints of shortness of breath. He was diagnosed with pneumonia, prescribed medication, and advised to follow-up with a pulmonologist. Mr. Dotson alleged in his Employee's and Physician's Report of Occupational Injury that his lungs were injured on September 9, 2014.

1

On September 19, 2014, Mr. Dotson was treated by Obaeda Harfoush, M.D., for shortness of breath. He was diagnosed with an abnormal chest x-ray, pneumoconiosis, pneumonia, shortness of breath, and RADS. Dr. Harfoush believed the RADS was related to exposure to an unknown gas in the mine. He recommended a pulmonary function test. On October 9, 2014, the claims administrator rejected compensability of the claim as the RADS did not develop in the course of and resulting from his work.

Mr. Dotson testified via deposition on January 12, 2015. He stated he was working on September 9, 2014, when he started smothering. He continued to work and when he went home the smothering feeling remained. He did not work the next day because the mine was closed due to two miners becoming ill the previous night. He returned to work on September 11, 2014, but had problems breathing and tightness in his chest so he was taken by ambulance to the hospital. He was diagnosed with pneumonia. However, a few days later Dr. Harfoush told him he had breathed some kind of chemical and not to return to work. When Mr. Dotson returned to work on December 2, 2014, he was unable to continue due to feeling like he was smothering.

On February 10, 2015, Lamlia Ibrahim, M.D., examined Mr. Dotson and noted he was breathing better since he stopped working. Spirometry testing revealed a very severe obstructive ventilator defect. Dr. Ibrahim opined the reduction in forced vital capacity (FVC) may have been secondary to an obstruction or it may have indicated an associated restrictive defect.

Karen Mulloy, D.O., evaluated Mr. Dotson on February 17, 2015. In a letter to Dr. Ibrahim, she explained that RADS is the development of respiratory symptoms in minutes or hours after an exposure to a very high level of a respiratory irritant. The initial criteria include the onset of asthma symptoms within twenty-four hours of a single exposure, absence of pre-existing lung disease, objective evidence of asthma, and continuation of asthma type symptoms for at least three months. This diagnosis is largely circumstantial, relying on the history of exposure, absence of documented preceding airway disease, and objective documentation of asthma. In Dr. Mulloy's opinion, Mr. Dotson met the criteria for RADS. She opined there was no way of knowing specifically to what respiratory irritant he had been exposed. However, she had no evidence that Mr. Dotson developed RADS from an exposure outside of the mine. The fact that two other miners became ill lends more credence to a workplace exposure.

On March 26, 2015, J. Randolph Forehand, M.D., evaluated Mr. Dotson for his federal black lung claim. He found Mr. Dotson had a history of wheezing attacks in 2014. He obtained a chest x-ray, vent study, arterial blood gas, and EKG. All were normal. Dr. Forehand found no evidence of an active lung disease. He found no respiratory impairment.

Stephen G. Basheda, D.O., performed a medical records review on June 24, 2015. He disagreed with the diagnosis of RADS. He stated that RADS was a non-immunologic pulmonary disorder characterized by bronchial hyper-responsiveness/airway obstruction secondary to a single, acute inhalational injury of a high concentration of an irritant/toxic gas, aerosol, or smoke and the onset of symptoms occurs within minutes to hours of exposure. Dr. Basheda stated he found no history of an acute exposure to a high concentration of a known irritant. The air quality

2

tests for oxygen, methane, and carbon dioxide were negative. None of the well-known irritants and/or toxins that cause RADS were documented. Additionally, the onset of Mr. Dotson's symptoms was two days before the reported exposure, which was documented in the medical records as being on September 11, 2014. Dr. Basheda also opined that the diagnosis of RADS requires the absence of previous respiratory symptoms. Mr. Dotson had a history of previous respiratory symptoms. In Dr. Basheda's opinion, Mr. Dotson's proper diagnosis was asthma which was trigged by the infection due to his pneumonia. When Mr. Dotson returned to the mines in December of 2014, the asthma symptoms were aggravated. Dr. Basheda did not have the CT scan films to review. However, in his opinion the pulmonary function testing performed on September 30, 2014, revealed evidence of asthma. Dr. Basheda found no evidence of RADS.

Dr. Mulloy performed a records review on November 14, 2015, which included a review of Dr. Basheda's report. Dr. Mulloy noted that the MSHA inspectors completed tests for air quality, including methane, carbon monoxide, and oxygen. These levels were normal at the time of the inspection on September 10, 2014. However, RADS is caused by gases that are irritants. None of the gases that were tested for by MSHA are irritants. Dr. Mulloy noted the inspectors advised they did not test for any other types of gases, vapors, fumes, smoke, or dust. Additionally, Mr. Dotson's symptoms developed less than twenty-four hours after the exposure on September 9, 2014. The diagnosis of RADS requires the absence of pre-existing asthma symptomatology or a history of asthma in remission not just previous respiratory symptoms. Mr. Dotson had never been diagnosed with asthma nor had persistent asthma symptomatology prior to September 9, 2014. In her opinion, it was more likely than not that Mr. Dotson's diagnosis of RADS was related to an exposure on September 9, 2014.

Dr. Basheda reviewed additional medical records and prepared an additional report on November 30, 2015. He did not agree with Dr. Mulloy. In his opinion, one could not assume that an undocumented exposure to an unknown chemical caused RADS. There was evidence of a feeder bell smoking, so it was possible that the smoke triggered or exacerbated Mr. Dotson's underlying asthma. Dr. Mulloy mentioned that two other miners had to be transported to the hospital the night Mr. Dotson became ill. However, he was unable to confirm acute respiratory disease of those miners as he had no documented evidence of respiratory disease available to review. Dr. Basheda opined that it was more likely that Mr. Dotson had an environmental exposure that resulted in an exacerbation of his underlying asthma. He could have also had an underlying pneumonia. Mr. Dotson also had an underlying respiratory disease.

The Office of Judges reversed the claims administrator's October 9, 2014, rejection of the claim on April 22, 2016, and held the claim compensable for RADS. It determined that Mr. Dotson had established by a preponderance of the evidence that he sustained a pulmonary injury in the course of and as a result of his employment. The Office of Judges relied on the testimony of Mr. Dotson and the medical opinions of Drs. Mulloy and Ibrahim. Dr. Mulloy opined that Mr. Dotson met the criteria for RADS and there was no evidence that he developed RADS from an exposure outside of the mine. Her opinion was supported by that of Dr. Ibrahim and Dr. Harfoush. The OOJ determined Dr. Basheda's opinion that the claimant had a longstanding pre-existing asthma condition had insufficient evidentiary support. The Office of Judges also determined that Mr. Dotson's inability to identify the specific chemical agent related to his

exposure and causing his pulmonary response was not fatal to his claim. MSHA only tested air quality in relation to methane, carbon monoxide, and oxygen levels. No testing was performed for irritants that could have caused RADS. However, Dr. Mulloy noted many known respiratory irritants when she reviewed the 2010 Material Safety Data Sheets. The Office of Judges found that there was no evidence of any event which could explain Mr. Dotson's development of RADS other than the exposure on September 9, 2014. The Office of Judges further found the temporality of Mr. Dotson's symptoms was consistent with an exposure on September 9, 2014.

The Office of Judges also noted the employer had submitted voluminous records regarding Mr. Dotson's smoking history, psychological history, and history of black lung claims. However, Mr. Dotson had no pre-existing asthma symptomatology and had no history of pulmonary function testing prior to the September 9, 2014, incident. The records, therefore, did not persuade the Office of Judges that Mr. Dotson simply had pneumonia, or that he had a pre-existing condition that led to the development of RADS.

The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its opinion on July 15, 2016. After review, we agree with the Board of Review. Mr. Dotson developed trouble breathing while working in the mine on September 9, 2014. The mine was shut down later that same night due to dizziness of two other miners. The mine was temporarily idled for inspection purposes the next day. The inspectors found no evidence of the presence of the gases for which they were inspecting. However, they only checked for three gases. The Material Safety Data Sheets reviewed by Dr. Mulloy revealed that many respiratory irritants could have been present in the mine. Clearly there was some type of irritant present in the mine on September 9, 2014, that led to Mr. Dotson and two other miners having difficulty while working.  As a result of that difficulty, Mr. Dotson developed RADS.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: July 6, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker